UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

MAPLE DRAKE AUSTELL OWNER, LLC,                )
                                               )
          Petitioner,                          )
                                               )
v.                                             )          Civil Action No. 19-cv-5930
                                               )
D.F. PRAY, INC.                                )
                                               )
          Respondent.                          )
_____)

**RESPONDENT'S CONSOLIDATED RESPONSE TO VERIFIED PETITION AND
ORDER TO SHOW CAUSE WITH MEMORANDUM OF LAW IN SUPPORT
THEREOF**

D.F. PRAY, INC.
By its attorneys,

*/s/ Denis Serkin*
Denis Serkin, Esq.
PECKAR & ABRAMSON, P.C.
1325 Avenue of the Americas, 10th Floor
New York, New York 10019
Tel: (212) 382-0909

*/s/ Richard E. Briansky*
Richard E. Briansky, Esq. (*pro hac
forthcoming*)
ECKERT SEAMANS CHERIN &
MELLOTT LLC
2 International Place #1600
Boston, MA 02110
Tel: (617) 342-6800

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .............................................................................................1

FACTS ..........................................................................................................2

PROCEDURAL HISTORY...................................................................................7

ARGUMENT ...................................................................................................8

I.      THE COURT LACKS JURISDICTION TO DETERMINE
        ARBITRABILITY ....................................................................................8

II.     THE PARTIES' DISPUTE IS ARBITRABLE AND THE REQUEST FOR
        INJUNCTIVE RELIEF SHOULD BE DENIED AND THE
        PETITION DISMISSED ...........................................................................10

        A.      The Arbitration Provision in the General Contract if Void and the
                PPA's Expedited Arbitration Proceeding is Available to Pray.................10

        B.      The Parties' Dispute is Within the Scope of the PPA's
                Arbitration Provision ....................................................................14

III.    THE ARBITRATOR SHOULD DECIDE THE LOCATION OF
        ARBITRATION ....................................................................................19

CONCLUSION................................................................................................19

## **TABLE OF AUTHORITIES**

**Cases**

*Capital Siding & Construction, LLC v. Alltek Energy Sys., Inc.,*
  No. 11796497, 2016 WL 3231282 (N.Y. Sup. June 6, 2019) .................................... 12, 13, 14

*Congress Const. Co., Inc. v. Geer Woods, Inc.,*
  No. 3:05CV1665, 2005 WL 3657933 (D. Conn. Dec. 29, 2005) ............................................ 9

*Contec Corp. v. Remote Solution, Co., Ltd.*
  398 F.3d 205 (2d Cir. 2005) ........................................................................................ 1, 8, 9

*Diamond Waterproofing Co. v. 55 Liberty Owners Corp.,* .......................................................... 1
  6 A.D.3d 101, 104 (N.Y. App. Div. 2004)

*Flintlock Constr. Services, LLC v. Global Precast, Inc.,*
  No. 655260/218, 2019 WL 1919251 (N.Y. Sup. Apr. 30, 2019) .............................. 10, 15, 18

*Howsam v. Dean Whitter Reynolds, Inc.,*
  537 U.S. 79 (2002) .......................................................................................................... 10

*In re Arbitration between Capital Siding & Const., LLC,*
  138 A.D.3d 1265 (N.Y. App. Div. 2016) ................................................................ 12, 13, 14, 15

*In re Kliger-Weiss Infosystems, Inc. v. Epicor Retail Solutions Corp.,*
  No. 1091082011, 2011 WL 1104815 (N.Y. Sup. Ct. Sept. 1, 2011) ...................................... 10

*John Wiley & Sons, Inc. v. Livingston,*
  376 U.S. 543 (1964) .......................................................................................................... 10

*Pike Co., Inc. v. Tri-Krete Ltd.,*
  329 F. Supp.3d 265 (W.D.N.Y. 2018) ......................................... 10, 11, 12, 13, 14, 15, 17, 18

*Smith Barney Shearson v, Sacharow,* 91 N.Y.2d 39, 45-46 (N.Y. 1997) ...................................... 8

*Southgate Owners Corp. v. KNS Bldg. Restoration, Inc.,*
  No. 651927/2013, 2013 WL 5869618 (N.Y. Sup. Ct. July 24, 2013) .................................... 13

*Steinmetz v. Annucci,*
  No. 17-CV-01000-LJV-JJM, 2018 WL 4765128 (W.D.N.Y. June 28, 2018) ........................ 10

*The Dakota, Inc. v. Nicholson & Galloway, Inc.,*
  No. 656280/2018, 2019 WL 429471 (N.Y. Sup. Ct. Feb. 4, 2019) ...................... 10, 12, 15, 17

*The Shaw Group, Inc. v. Triplefine Intern. Corp.,*
  322 F.3d 115 (2d Cir. 2003) .............................................................................................. 9

*Turner Constr. Co. v. J & A Concrete Corp.,*
  44 Misc.3d 217 (N.Y. Sup. Ct. 2014) .......................................................................... 13, 14

**Statutory Authorities**

9 U.S.C. §§ 1-2 ....................................................................................................................... 1

N.Y. Gen. Bus. Law § 756 ....................................................................................................... 3

N.Y. Gen. Bus. Law §756-a ................................................................... 4, 5, 10, 13, 14, 17

N.Y. Gen. Bus. Law § 756-b .......................................................................................... 15, 17

N.Y. Gen. Bus. Law § 757 ................................................................... 4, 11, 12, 13, 14

N.Y. Civ. Prac. L. & R. § 7503 .................................................................... 1, 8, 10, 18

**Rules and Regulations**

AAA Construction Industry Arbitration Rules and Mediation Procedures, Rule 9 ...................... 9

AAA Construction Industry Arbitration Rules and Mediation Procedures, Rule 12 .................. 19

Fed. R. Civ. P. 65 .................................................................................................................. 8

Pursuant to this Court's Order dated June 25, 2019, Respondent D.F. Pray, Inc. ("Pray") files its consolidated response to the Verified Petition filed by Petitioner Maple Drake Austell Owner, LLC ("Maple Drake" or the "Owner") and Order to Show Cause.

## INTRODUCTION

Pray, a construction manager, exercised its statutory right to demand "expedited arbitration" under the Prompt Pay Act (the "PPA") to collect an interim payment (Application and Certification for Payment No. 30 ("Application No. 30")) in the amount of $721,305.59 from the Owner (the "Demand"). In response to the Demand, the Owner filed this Petition under CPLR § 7503[1] to permanently stay Pray's right to expedited arbitration and preclude Pray and its subcontractors from collecting the interim payment of $721,305.59. The Owner concedes that the parties are subject to the PPA and Pray complied with the statutory prerequisites to expedited arbitration but seeks to avoid the PPA by claiming that (1) the Owner cannot be "forced to arbitrate" under the PPA because the contractual dispute resolution provision requires "mutual consent" to arbitration; (2) the PPA "applies to undisputed invoices only" and thus, this dispute is not arbitrable under the PPA; and (3) even if the dispute is arbitrable, the court should order the parties to arbitrate in New York.

The Owner's request for injunctive relief should be denied and the Petition dismissed with prejudice for several reasons. First, PPA, through the specific language selected by the Legislature, manifests a "clear and unmistakable" intent to have the question of arbitrability (and

---

[1]     The General Contract is a contract involving interstate commerce and is, therefore, governed by the Federal Arbitration Act ("FAA"), not CPLR § 7503. See Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005); 9 U.S.C. §§ 1-2; Diamond Waterproofing Co. v. 55 Liberty Owners Corp., 6 A.D.3d 101, 104 (N.Y. App. Div. 2004) (construction contract governed by FAA where supplies, equipment, and drawings (among other things) came from outside New York).

the location of the arbitration) determined by the arbitrator, not the court.  Specifically, the PPA requires the expedited arbitration to occur with the American Arbitration Association "pursuant to the Rules of the American Arbitration Association."  Those rules provide that issues of arbitrability are decided by the arbitrator.  Second, even if this Court could decide the issue of arbitrability, the dispute is arbitrable.  By its plain language, the PPA entitles Pray to invoke its statutory dispute resolution procedure and protects this right by declaring "void and unenforceable" any contractual provision, like the dispute resolution provision here, that precludes any party from exercising the PPA's expedited arbitration remedy.  Moreover, Pray has alleged a violation of the PPA and complied with all of the statutory prerequisites to expedited arbitration under the statute, which is all that is required for the dispute to be subject to expedited arbitration.  Third, the arbitrator should decide the location of the arbitration and, in any event, the Owner's request concerning the location of the arbitration is premature.  No arbitrator has been appointed and, thus, the arbitrator has not made a decision concerning the location of the arbitration that could be objectionable to the Owner.

## **FACTS**

On or about November 2015, the Owner purchased property located at 47-37 Austell Place, Queens, New York (the "Property") for approximately $35 million, with the intent of converting a 110,000 square foot industrial building to a 138,000 square foot five story Class A office building with retail space (the "Project").  Petition at ¶ 6.

After purchasing of the Property but before completing its design of the Project, the Owner retained Pray to perform and manage the construction.   Petition at ¶¶ 7-8.

Both Pray and the Owner signed a Standard Form of Agreement Between Owner and Construction Manager dated August 29, 2016 where the basis of payment is the Cost of the

Work Plus Fee with a Guaranteed Maximum Price and General Conditions of Contract for Construction (collectively the "General Contract").   General Contract, a copy of which is attached as **Exhibit A**; Petition at ¶ 10.  The General Contract provided that: "Upon mutual agreement of the parties, any dispute arising out of or relating to this Agreement shall be submitted for arbitration before the American Arbitration Association in accordance with construction industry standards."  Id. at § 9.1.3.

After the design was completed, Pray submitted a guaranteed maximum price to the Owner and, by Guaranteed Maximum Price Amendment dated February 13, 2017 (the "Amendment"), the Owner agreed to a guaranteed maximum price of $25,033,676.  Amendment, a copy of which is attached as **Exhibit B**;[2] Petition at ¶ 14.

Pray then issued payment and performance bonds in the principal amount of $25,033,676 identifying the Owner as principal and Pray as obligee (the "Bonds").  Bonds, copies of which are attached as **Exhibit C**; Petition at ¶ 15.  The Bonds protected the Owner from any loss from, among other things, Pray's failure to pay subcontractors, vendors and suppliers.  Id.

Through the General Contract, the Owner agreed that the "Architect" would approve any progress payment within seven (7) days of receipt and the Owner would pay the amount

---

[2]      As a result of the Amendment, the General Contract is subject to the time periods for periodic payments set forth in the PPA.  Specifically, the General Contract was a private contract for the conversion (i.e. "alteration, maintenance or demolition of") of a building to retail and office space and "the aggregate cost of the construction project" "equals to or exceeds one hundred fifty thousand dollars."  See N.Y. Gen. Bus. Laws § 756.

approved within "forty-five days of approval."[3]  Specifically, the General Contract required that the Architect:

> within seven (7) days after receipt of the Contractor's Application for Payment either issue to the Owner a Certificate for Payment…or notify the Contractor and the Owner in writing of the Architect's reasons for recommending withholding certification in whole or in part as provided in Section 9.5.1
>
> \* \* \*
>
> Owner may also withhold payments to the Contractor…**to such extent as may be necessary** in the Owner's opinion **to protect the Owner from loss for which the Contractor is responsible**" "because of"
>
> .2     third party claims filed or reasonable evidence indicating probable filing of such claims **unless security acceptable to the Owner is provided by the Contractor**;
>
> \* \* \*
>
> .8     liens or attachments that have been asserted against the Work or against the Owner or the Owner's property relating to any of the Work and the Contractor has not taken legal steps to bond same, except for liens or attachments arising out of the **Owner's failure to make payment in accordance with the Contract Documents**

---

[3]     These provisions requiring payment 45 days after approval violate the PPA.  Rather, the PPA requires that Owner make payment within 30 days of approval (i.e. 37 days after submission).  <u>See</u> N.Y. Gen. Bus. Laws § 756-a(3)(ii) ("payment of an interim invoice shall be due from the owner not later than thirty days after approval of invoice."); N.Y. Gen. Bus. Laws § 757 ("Void provisions"….4.  A provision, covenant, clause or understanding in collateral to, or affecting a construction contract establishing payment provisions which differ from those established in subdivision three of section seven hundred and fifty-six-a and seven hundred and fifty six-b" "shall be void and unenforceable.").

(emphasis added).[4]

Pray carefully planned, coordinated, and scheduled its work on the Project in accordance with the contract documents but its progress was impacted by Owner, which caused delays including (among others) failure to process and pay applications timely.

With significant money outstanding, by letter dated August 6, 2018, Pray demanded that the Owner recognize the costs associated with the Owner-caused delays and expedite progress payments.[5]   August 6, 2018 Letter, a copy of which is attached as **Exhibit D**.

---

[4]     N.Y. Gen. Bus. Laws §756-a modifies the General Contract to the extent it limits the basis upon which the Owner may "decline" to approve an invoice in whole or in part. §756-a 2. Specifically, it requires that:

> [U]pon delivery of an invoice and all contractually required documents an owner shall approve or disapprove all or a portion of the invoice within twelve business days.  Owner approval of invoices **shall not be unreasonably withheld** nor **shall an owner in bad faith disapprove all or a portion of the invoice**.  If an owner declines to approve an invoice or a portion thereof it must prepare and issue a written statement describing those items in the invoice that are not approved.

and limits the right to withhold interim payment to:

> Only an amount that is sufficient to pay the costs and expenses owner reasonably expects to incur in order to cure the defect or correct any items set forth in writing pursuant to subparagraph (i) of paragraph (a) of subdivision two of this section or in the alternative to withhold an amount not to exceed the line item amount appearing in the agreed schedule of values together with any change orders, additions and/or deletions

(emphasis added).

[5]     Throughout the Project, the Owner violated the PPA, by among other things, refusing to process timely applications for payment.  Specifically, rather than the 37 days to process pay applications, the Owner process extended the time for payment  more than 60 days.  The delay materially impacted Pray and its subcontractors all of whom were forced to fund the Project and wait more than three months for payment.

With an outstanding arrearage of approximately $1.9 million, Pray recorded a mechanic's lien on August 7, 2018.  Mechanic's Lien, a copy of which is attached as **Exhibit E**.

 On May 9, 2019, Pray submitted Application No. 30 in the amount of $721,305.39. Application, a copy of which is attached as **Exhibit F**; Petition at ¶ 27.

By letter dated May 13, 2019, the Owner withheld payment of Application No. 30 ("Notice of Withholding") and justified the withholding based upon Pray's previously recorded mechanic's lien (and associated refusal to dissolve the lien).  Rejection, a copy of which is attached as **Exhibit G**; Petition at ¶ 28.  The Notice of Withholding represented that the Owner is:

> not able to process payment to D.F. Pray at this time.  Pursuant to Article 9.5.1 of the General Conditions we are withholding payment because the total amount of liens which have been filed against the property by D.F. Pray and/or its subcontractors and the amount of other claims against the D.F. Pray contract for which we have received notice exceeds the outstanding balance which will be due to D.F. Pray upon satisfactory completion of the contract work.

Pursuant to the PPA, by letter dated May 23, 2019, Pray issued a Notice of Complaint Under The Prompt Pay Act (the "Complaint").  Complaint, a copy of which is attached as **Exhibit H**; Petition at ¶ 29.  The Complaint represented that the Notice of Withholding "failed to identify any liens filed or claims asserted against the Property nor are the amounts [of] any of these alleged liens or claims identified."  The Complaint further:

- represented that the Owner has no "right to withhold any money from Pray and its subcontractors because Pray exercised its statutory right to lien the Property….To the extent the Owner is withholding payment to leverage Pray to dissolve its lien this is a material breach of contract and unfair and deceptive act;" and

- confirmed that it was "written notice" that the Owner has "violated the Prompt Pay
  Act.  Under the Prompt Pay Act if the dispute is not resolved within fifteen (15) days
  of receipt of notice of complaint," "Pray has the right to demand expedited
  arbitration."

By letter dated June 10, 2019, the Owner responded to the Complaint (the "Response").

Response, a copy of which is attached as **Exhibit I**; Petition at ¶ 30  The Response confirmed

that the Owner withheld payment from Pray because Pray asserted a lien on the Project and

concluded that:

> [S]ince the amount of liens exceed the remaining amount to be
> paid for the project [$2.77 million] we are fully within our
> contractual rights to withhold payment.

On June 14, 2019, Pray made a demand for expedited arbitration under the PPA.

Demand, a copy of which is attached as **Exhibit J**; Petition at ¶ 31.

On June 19, 2019, the American Arbitration Association ("AAA") informed the parties

that the "Rules provide that any answer, counterclaim or objection to Claimant's requested locale

of Boston, MA should be filed within seven days from the date of this letter on or before June

26, 2019."  June 19, 2019 Letter, a copy of which is attached as **Exhibit K**; Petition at ¶ 32.

## PROCEDURAL HISTORY

On the evening of June 24, 2019, the Owner filed the Verified Petition, Memorandum of

Law in Support of Verified Petition to Stay Arbitration and Application for Temporary

Restraining Order, and proposed Order to Show Cause, among other filings, in the Supreme

Court of New York, New York County.  Dk. No. 1.

On the morning of June 25, 2019, Pray removed the action to this Court.  Pray

immediately provided the Owner with notice of the removal.  Dk. No. 1.

Thereafter, on June 25, 2019, the Owner filed a proposed "Order to Show Cause For Preliminary Injunction and Temporary Restraining Order" and Affidavit in support thereof in this Court and requested the Court enjoin the arbitration proceedings. Proposed Order and Affidavit, copies of which are attached as **Exhibit L**.

On June 25, 2019, the Court issued an order staying the "pending arbitration and June 26, 2019 response deadline . . . for fourteen (14) days," requiring Pray to "submit a Response to the Petition, in writing . . . by June 28, 2019 at 5:00 p.m." and for the parties to appear and Pray to "show cause . . . . why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining [Pray] during the pendency of this action from proceeding with arbitration commenced by [Pray] pending hearing of Petitioner's application to stay pursuant to CPLR 7503(b)." Order, a copy of which is attached as **Exhibit M**.

## ARGUMENT

## I.   THE COURT LACKS JURISDICTION TO DETERMINE ARBITRABILITY.

It is well-settled that the issue of arbitrability will be referred to the arbitrator if "there is 'clear and unmistakable evidence' from the arbitration agreement, as construed by relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir. 2005) (internal citations omitted); see also Smith Barney Shearson v, Sacharow, 91 N.Y.2d 39, 45-46 (N.Y. 1997) (question of arbitrability for arbitrator where there is a "clear and unmistakable agreement to arbitrate arbitrability"). When arbitration rules permit the arbitrator to rule on his or her own jurisdiction and those rules are incorporated by referenced into an arbitration provision, the arbitrator – not the court - must decide issues of arbitrability. Contec Corp., 398 F.3d at 208 (finding that where AAA rules were incorporated into arbitration provision and rules included

language identical to AAA Rule 9(a), issue of arbitrability was for the arbitrator to decide); see also The Shaw Group, Inc. v. Triplefine Intern. Corp., 322 F.3d 115 (2d Cir. 2003) (holding that similar language in the rules of the International Chamber of Commerce provided clear and unmistakable evidence of the parties' intent to submit questions or arbitrability to the arbitrator); Congress Const. Co., Inc. v. Geer Woods, Inc., No. 3:05CV1665, 2005 WL 3657933, at * (D. Conn. Dec. 29, 2005) (finding that where the AAA's Construction Rules, including Rule 9(a), were incorporated into an arbitration provision, there was clear and unmistakable evidence that the arbitrator was to determine issues of arbitrability).

Here, by statute, the issues of arbitrability are determined by the arbitrator.  The PPA expressly provides that expedited arbitration shall occur with the American Arbitration Association "pursuant to the Rules of the American Arbitration Association."  As in Contec and Congress, the AAA Rules provide, *inter alia*, that the "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  Construction Industry Arbitration Rules and Mediation Procedures, R-9(a) and 12, a copy of the application rules are attached as **Exhibit N**.[6]  By expressly incorporating the Rules of the AAA into the PPA's arbitration provision, Legislature evidenced a clear and unmistakable intent to leave the question of arbitrability to the arbitrator

---

[6]     Rule 9(b) further provides that: "The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.  Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract.  A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause."

and, therefore, the issues raised by the Owner should be determined by the arbitrator, not this

Court[7]

## II.   THE PARTIES' DISPUTE IS ARBITRABLE AND THE REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DENIED AND PETITION DISMISSED.[8]

### A.   The Arbitration Provision in the General Contract is Void and the PPA's Expedited Arbitration Proceeding is Available to Pray.

By its plain language, the PPA manifests the Legislature's intent to "expedite payment of

all monies owed to those who perform contracting services pursuant to construction contracts."

N.Y. Gen. Bus. Law §§ 756-a.  In particular, the PPA requires that:

- "[u]pon delivery of an invoice and all contractually required documentation, an owner

  shall approve or disapprove all or a portion of such invoice within twelve business days"

---

[7]        Further, as discussed below, a "claim alleging a violation of the PPA is subject to arbitration so long as the prerequisites of § 756-(b)(3) have been satisfied." Pike Co., Inc. v. Tri-Krete Ltd., 329 F.Supp.3d 265, 276 (W.D.N.Y. 2018).  "The United States Supreme Court has held that questions concerning whether prerequisites to arbitration have met are for arbitrators – not courts – to decide." In re Kliger-Weiss Infosystems, Inc. v. Epicor Retail Solutions Corp., No. 1091082011, 2011 WL 1104815, at *2 (N.Y. Sup. Ct. Sept. 1, 2011) (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557-58 (1964) and Howsam v. Dean Whitter Reynolds, Inc., 537 U.S. 79, 85 (2002)).

[8]        In order to obtain a preliminary injunction a party must show, among other things, irreparable harm. Steinmetz v. Annucci, No. 17-CV-01000-LJV-JJM, 2018 WL 4765128, at *2 (W.D.N.Y. June 28, 2018), report and recommendation adopted, No. 17-CV-1000, 2018 WL 4762254 (W.D.N.Y. Oct. 2, 2018).  In cases where a party seeks to enjoin arbitration proceedings, irreparable harm exists only "when a party is forced arbitrate a dispute that is not subject to arbitration." Pike Co., Inc. v. Tri-Krete Ltd., 329 F.Supp.3d 265, 272 (W.D.N.Y. 2018)..  Thus, a court deciding a motion to enjoin arbitration proceedings should first determine whether the parties' disputes are arbitrable. Id. at 273.  If the claims are arbitrable , then injunctive relief must be denied the petition seeking to stay (and permanently enjoin) the arbitration proceedings must also be dismissed. See The Dakota, Inc. v. Nicholson & Galloway, Inc., No. 656280/2018, 2019 WL 429471 (N.Y. Sup. Ct. Feb. 4, 2019) (denying preliminary injunction and dismissing petition to stay arbitration under CPLR § 7503(b) where court found that parties' dispute was subject to arbitration under PPA); Flintlock Constr. Services, LLC v. Global Precast, Inc., No. 655260/2018, 2019 WL 1919251 at * (N.Y. Sup. Ct. Apr. 30, 2019) (accord).

but limits the owner discretion by requiring that "[o]wner approval of invoices **shall not be unreasonably withheld** nor **shall an owner, in bad faith, disapprove** all or a portion of an invoice;"[9]

- upon "declin[ing] an invoice, the owner "**must** prepare and issue a written statement describing those items in the invoices that are not approved;" and

- authorizes an "the aggrieved party" to "refer the matter, not less than fifteen days of the receipt of third party verification of delivery of the complaint, to the American Arbitration Association for an **expedited** arbitration pursuant to the Rules of the American Arbitration Association."

Id. at § 756-a(2)(a)(i); § 756-b(3)(c) (emphasis added).

To protect a contractor's right to expedited payment and the associated remedy to compel compliance, the Legislature declared "void and unenforceable:"

> [a] provision, covenant, clause or understanding in, collateral to or affecting a construction contract stating that expedited arbitration as expressly provided for in the manner established by [§ 756-b] is unavailable to one or both of the parties.

N.Y. Gen. Bus. Law § 757(3). "This statutorily-derived arbitration remedy was intended to promote 'speedier resolutions,' less the 'time and funds wasted in litigation,' and hasten the 'payment of monies owed.'" Pike Co. Inc., 329 F. Supp.3d 265 at 273-74.

Here, the Owner cannot avoid Pray's statutory remedy to compel expedited arbitration by contract. Rather, the Legislature, aware of the disparate bargaining power, protected Pray and other contractors by declaring "void" and "unenforceable" dispute resolution provisions – like

---

[9]      The  owner's payment of a contractor's interim and final invoices shall be paid on the basis of a duly approved invoice of work performed and the mater supplied during the billing cycle. Id. at § 756-a(3)(a).

the one set forth in the General Contract – that denies one or both of the parties the statutory right to expedited dispute resolution. See Pike, 349 F. Supp.3d at 273 (the PPA expressly prohibits and renders "void and unenforceable" "any contractual provision that causes the PPA's expedited arbitration remedy to become 'unavailable to *one or both parties.*'") (quoting N.Y. Gen. Bus. Law § 757(3)); In re Arbitration between Capital Siding & Const., LLC, 138 A.D.3d 1265, 1266 (N.Y. App. Div. 2016) (dispute resolution provision in construction subcontract that "denied both parties the opportunity to arbitrate" disputes under the subcontract" was "void and unenforceable" under the PPA and affirming denial of petitioner's application to stay arbitration); The Dakota, Inc., 2019 WL 429471, at *2 ("parties' agreement to litigate, and not arbitrate, disputes is void and unenforceable to the extent it precludes [the defendant] from properly invoking the PPA's expedited arbitration procedure"). Thus, the fact that a party "may not have formally agreed to arbitration . . . is irrelevant where the parties are subject to a compulsory arbitration provision set forth in a state statute." Pike, 349 F. Supp.3d at 273; see also Capital Siding & Constr., LLC v. Alltek Energy Sys., Inc., No. 11796497, 2016 WL 3231282, at *1 (N.Y. Sup. June 6, 2019) ("As the foregoing statute [PPA] confers upon respondent the right to initiate binding arbitration, the absence of a contractual agreement to arbitrate is of no moment.").

In Pike Co., Inc. v. Tri-Krete Ltd., 329 F. Supp.3d 265, 272 (W.D.N.Y. 2018), the general contractor claimed that, through the agreed upon dispute resolution procedure in the contract, it retained the "the right to reject arbitration and to commence litigation if it chose to do so," and it could, therefore, avoid arbitration under the PPA at its election. Id. at 274. Relying on the plain language of § 757(3) of the PPA, the United States District Court for the Western District of New York rejected this claim and concluded that the dispute resolution provision was

"void and unenforceable" because, it allowed the general contractor at its discretion to deprive

the subcontractor of its right to expedited arbitration under the PPA, and denied the requested

injunction.  Id. at 275.

Similarly here, the General Contract conditions any right to arbitration on "mutual

agreement of the parties."  See General Contract, § 9.1.3.  As in Pike, this dispute resolution

provision authorizes the Owner to "reject any arbitration demand arising out of a dispute related

to the [General Contract] at its sole discretion, effectively depriving [Pray] of its right to

expedited arbitration for any alleged PPA violations."  Pike, 349 F. Supp.3d at 275.  Thus, this

dispute resolution provision is void.

The Owner ignores the plain language in § 757 and its compulsory expedited arbitration

procedure and claims that the PPA "does not entitle DF Pray to circumvent the parties'

negotiated, agreed upon executed Contract."  To support its conclusion, the Owner relies upon

two trial court opinions, Southgate Owners Corp. v. KNS Bldg. Restoration, Inc., No.

651927/2013, 2013 WL 5869618, (N.Y. Sup. Ct. July 24, 2013) and Turner Constr. Co. v. J & A

Concrete Corp., 44 Misc.3d 217 (N.Y. Sup. Ct. 2014), in which the Supreme Court held that

dispute resolution provisions in the parties' contract overrode the PPA.  Both courts recognized

that the PPA authorizes the parties to "supersede" certain provisions in the PPA (N.Y. Gen. Bus.

Law § 756-a) but neither court recognized or acknowledged the express legislative prohibition

on superseding the right to expedited arbitration under N.Y. Gen. Bus. Law § 757.  See

Southgate Owners Corp., 2013 WL 5869618, at *2; Turner Constr. Co., 44 Misc.3d at 226. The

Pike, Capital Siding, and In re Arbitration between Capital Siding & Const., LLC, have all

rejected the conclusions in these two cases recognizing that logic applied was  "fundamentally flawed" because neither decision considers the plain language of N.Y. Gen. Bus. Law § 757(3).[10]

More fundamentally, the Owner's conclusion that parties through contract can avoid the expedited statutory arbitration provision renders any right to expedited payment intended by the Legislature meaningless.  Without an expedited remedy to compel compliance with the PPA, an aggrieved party is forced to conventional remedies, which would delay any enforcement of rights action until the conclusion of the project.

### B.      The Parties' Dispute Is Within the Scope of the PPA's Arbitration Provision.

The PPA's broad arbitration provision entitles Pray to arbitrate its interim payment dispute with the Owner.  See Pike Co., Inc., 349 F. Supp.3d at 275 ("The plain language of the

---

[10]      See Pike Co., Inc., 349 F.Supp.3d at 274 (The Turner court relied "on the contract language and the principle that a contract is to be construed so as to give effect to each and every part thereof" and "concluded that the petitioner could avoid arbitration under the PPA and resolve any disputes through litigation.  The Turner court's reasoning is fundamentally flawed because it fails to address § 757 of the PPA. . .  Because the PPA renders enforcement any contract provision that makes the PPA's expedited arbitration provision 'unavailable to one or both parties,' the Turner court overlooked § 757 in evaluating a subcontract provision that granted one party the sole option of determining the manner and forum or dispute resolution."); In re Arbitration between Capital Siding & Const., LLC, 138 A.D.3d at 1266-67 (rejecting petitioner's argument that "subcontract's dispute resolution provision supersedes the PPA's requirement that expedited arbitration be to available to an aggrieved party, and that it is unaffected by the '[e]xcept as otherwise provided' language of General Business Law § 756-a" because "the obvious function of . . . the subcontract is to establish litigation as the sole legal option for the resolution of disputes under the subcontract, which, in turn, denies both parties the opportunity to arbitrate such claims. Inasmuch as General Business Law § 757 (3) clearly operates to void and render unenforceable the subcontract's dispute resolution provision, we find that Supreme Court properly denied petitioner's application to stay arbitration"); Capital Siding & Constr., LLC,  2016 WL 3231282, at *2 ("While GBL § 756-a establishes a general policy of giving primacy to the terms of the parties' negotiated agreement, the '[e]xcept as otherwise provided' language used by the Legislature necessarily contemplates certain exceptions to that rule.  As observed by respondent, one such exception is GBL § 757 (3). . .  Thus, insofar as petitioner maintains that Section 6.2 of the Subcontract operates to deny respondent the right to pursue arbitration of its PPA claims, the clear and unambiguous language of GBL § 757 (3) renders the Subcontract void and unenforceable . . . .").

PPA reveals that its arbitration provision was broadly drafted in favor or arbitrability."). To invoke the statutory right to arbitration, all the PPA requires is "written notice of a complaint" that the "owner has violated the provisions of this article;" an attempt to "resolve the matter;" and upon an "unsuccessful effort to resolve, authorizes the "aggrieved party" to refer the matter" "to the American Arbitration Association for an expedited arbitration pursuant to the Rules of the American Arbitration Association." N.Y. Gen. Bus. Law § 756-b(3). Thus, by its plain language, all that is required to invoke this dispute resolution mechanism is a claim alleging a violation of the PPA and a satisfaction of the procedural prerequisites (i.e., serving a written complaint and demanding arbitration). Id. at 276 ("[A] claim alleging a violation of the PPA is subject to arbitration so long as the prerequisites of § 756-(b)(3) have been satisfied."); see also id. at 276-77 ("In other words, if a []contractor alleges that the PPA was violated and satisfies the prerequisites of § 756-b(3), then the claim may proceed to arbitration where the contractor may raise any applicable defense to support its non-payment."); The Dakota, Inc., 2019 WL 429471, at *2 (accord); Flintlock Const. Services, LLC, 2019 WL 1919251, at *3-4; In re Arbitration between Capital Siding & Const., LLC, 138 A.D.3d at 1266 (holding that mere accusations by a subcontractor that a contractor violated the PPA may be referred to the AAA for expedited arbitration under the PPA).

Here, Pray complied with all conditions precedent to demand arbitration. In particular:

- the Owner, by written notice dated May 13, 2019, rejected Pray's interim application based upon its claim that "the total amount of liens which have been filed against the property by D.F. Pray and/or its subcontractors and the amount of other claims against the DF Pray contract" "exceeds the outstanding balances" (Notice of Withholding);

- By Notice of Complaint Under The Prompt Pay Act (the "Complaint") dated May 23, 2019, Pray confirmed that it was providing "written notice" that the Owner has "violated the Prompt Pay Act" by conditioning an interim payment upon the release of a lien for either Pray or its subcontractors, and notifying the Owner that: "Under the Prompt Pay Act if the dispute is not resolved within fifteen (15) days of receipt of notice of complaint," "Pray has the right to demand expedited arbitration."  (Complaint);

- The Owner responded to the Complaint by letter dated June 10, 2019, denied any violation of the PPA and confirmed that the basis for withholding of the interim payment was based upon Pray's lien.  (Response) ("Since the amount of liens exceed the remaining amount to be paid for the project [$2.77 million] we are fully within our contractual rights to withhold payment."); and

- The dispute was not resolved and Pray filed a demand with the AAA on June 14, 2019. (Demand).

Thus, there is no question that Pray complied with the statutory prerequisites to expedited arbitration under the PPA.

The Owner appears to concede that Pray complied with the statutory conditions precedent to filing a demand for arbitration under the PPA.  Instead, the Owner challenges Pray's right to demand arbitration by claiming that the PPA "applies to undisputed invoices only" and since the invoice is disputed, the PPA does not apply and the claims are not arbitrable.[11]  (Memorandum at 7).  Nowhere in the plain language of the statute is the right to expedited arbitration limited to

---

[11]    The Owner identifies a series of defenses to Pray's interim payment application (most of which were not identified in their statutory notice of rejection).  Pray disputes these basis for rejection but because the defenses to the interim application are the subject of the arbitration and not relevant to the right to arbitrate, Pray will not exhaustively attack these defenses. Moreover, the Owner has submitted no admissible evidence of the facts supporting its defenses to allow the Court to consider them on a Rule 65 motion.

16

only "undisputed" invoices.  Rather, the broad arbitration provision authorizes the invocation of arbitration for "any violations of this article," including among others the bad faith or unreasonable withholding of interim payments.  N.Y. Gen. Bus. Laws § 756-a(2)(a)(i).

Nor would restricting the right to demand expedited arbitration to only "undisputed" payments (as the Owner suggests) be consistent with the legislative objectives of the PPA of "speedier resolutions" and reduced "time and funds wasted in litigation."  See Pike Co., Inc., 349 F. Supp.3d at 277.  Instead, the restriction would effectively eliminate the expedited statutory remedy and delay the payment process.  Id. (if every time a demand for arbitration is made – in full satisfaction of the prerequisites for arbitration under § 756-b(3) – the resisting party may invoke substantive questions challenging the merits of the alleged violation before any arbitration may proceed, the laudatory objections of the PPA, including 'speedier resolutions,' and reduced 'time and funds wasted in litigation,' would be undermined." (internal citations omitted).  Any resisting party could avoid the mandatory arbitration provision merely by challenging the merits of a claim, which would shift the dispute resolution forum from the American Arbitration Association to the Court.  See The Dakota, Inc., 2019 WL 429471, at *2 (court "should not engage in an extensive analysis of whether the PPA has been violated" because it would "necessarily render the PPA's expedited arbitration remedy useless as a tool to avoid protracted and expensive litigation."); Pike Co., Inc., 349 F. Supp.3d at 277 ("Furthermore, an extensive analysis by a court of whether the PPA has been violated, and any related affirmative defenses, would leave very little for an arbitration panel to resolve.  It is doubtful that the state legislature contemplated that the AAA would play so minimal a role in resolving alleged PPA violations when the aggrieved party demands expedited arbitration.").  For these reasons and based on the plain language of the statute, courts have already rejected this approach

concluding that a party's "right to pursue arbitration under the PPA is not contingent upon [its] ability to establish now that it is certain to succeed at establishing a violation of the PPA at arbitration."  Flintlock Const. Services, LLC, 2019 WL 1919251, at *3-4; see also Pike Co., Inc., 349 F. Supp.3d at 276 ("So long as the []contractor plausibly alleges that the PPA has been violated, the question of whether there has actually been a violated is an issue for the arbitrator to decide."); id. at 277 ("As the plain language of the PPA makes clear, the disputed resolution provisions are triggered by the mere *allegation* that the contractor has violated the statute, and thus, whether it has actually done so is question best left to arbitration.").

In Flintlock Constr. Services, LLC v. Global Precast, Inc., No. 655260/218, 2019 WL 1919251, at *2-3 (N.Y. Sup. Apr. 30, 2019), a contractor filed a petition to permanently stay arbitration under CPLR 7503(b) and to preliminarily enjoin the arbitration proceedings claiming that alleged PPA violations did not involve "undisputed invoices within the meaning of the PPA" and, therefore, were not arbitrable.  The Court rejected this argument and concluded that because the subcontractor had plausibly alleged a PPA violation, all it needed to do was demonstrate that it satisfied the statutory prerequisites for any alleged PPA violations to be properly before the AAA.  Id.  The Flintlock court acknowledged that the contractor had the ability to raise any affirmative defenses in the arbitration proceedings.  Id. at *3.

Similarly here, the Owner can raise any defense it has to support its non-payment of the Payment Application in the expedited arbitration proceeding.  See id. at 3; Pike Co., Inc., 349 F. Supp.3d at 277 (owner may raise "any applicable defense to support its non-payment" in arbitration).

## III.     THE ARBITRATOR SHOULD DECIDE THE LOCATION OF ARBITRATION

Any claim by the Owner that this Court, not the arbitrator, should determine the location of the arbitration should be rejected. Here, the AAA has been designated by statute to conduct the expedited arbitration.  Rule 12 of the AAA Rules sets forth a specific procedure to "fix[ the] locale" of the arbitration, which vest the arbitrator with authority to determine any disputes regarding the locale.  See Rule 12 ("The parties may mutually agree to the locale where the arbitration is to be held.  Any disputes regarding the locale must be submitted to the AAA and all other parties within 14 calendar days from the date of the AAA's initiation of the case or the date established by the AAA.  Disputes regarding locale shall be determined in the following manner . . . "). Thus, the arbitrator – not this Court – should determine the location of the arbitration.

Even if the Court had the authority to determine (or change) the venue of the arbitration, the Owner's request is premature.  An arbitrator has not been appointed and the venue has not yet been determined by the arbitrator.  As a result, there has been no decision by the arbitrator that could be objectionable to the Owner and no reason for the Court to interfere in the arbitrator's decision making.

## CONCLUSION

For the reasons set forth above, the Pray request the Court deny the Owner's request for injunctive relief, dissolve the temporary restraining order staying the arbitration proceedings, dismiss the Petition, and award such other relief that is just and appropriate.

19

Respondent,
D.F. PRAY, INC.
By its attorneys,

*/s/ Denis Serkin*
Denis Serkin, Esq.
PECKAR & ABRAMSON, P.C.
1325 Avenue of the Americas, 10th Floor
New York, New York 10019
Tel: (212) 382-0909

*/s/ Richard E. Briansky*
Richard E. Briansky, Esq. (*pro hac forthcoming*)
ECKERT SEAMANS CHERIN & MELLOTT LLC
2 International Place #1600
Boston, MA 02110
Tel: (617) 342-6800

Dated: June 28, 2019

## CERTIFICATION

I hereby certify that on June 28, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that on June 28, 2019, a copy of the foregoing was hand delivered to counsel of record at Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York, 10004-1980.

*/s/ Denis Serkin*
Denis Serkin, Esq.