UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAPLE DRAKE AUSTELL OWNER, LLC,

    Petitioner,

-against-

D.F. PRAY, INC.,

    Respondent.



19-cv-5930 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

    Petitioner Maple Drake Austell Owner, LLC ("Maple Drake") seeks a preliminary injunction staying an arbitration commenced by respondent D.F. Pray, Inc. ("Pray"). For the reasons that follow, the petition is denied.

    Maple Drake is the owner of property that is undergoing construction in Queens. Pray is the general contractor for the project. The construction contract is governed by New York's Prompt Payment Act ("PPA"), which, among other things, mandates a particular procedure for the submission and payment of contractor invoices. Specifically, upon receiving an invoice, the building owner must "approve or disapprove" the invoice. N.Y.G.B.L. § 756-a(2)(a)(i). Grounds for disapproval include "[u]nsatisfactory or disputed job progress" and "[f]ailure to comply with other material provisions of the construction contract." N.Y.G.B.L. §§ 756-a(2)(a)(i)(1), (4). An owner must not, however, "unreasonably

1

withh[o]ld" approval or "in bad faith disapprove all or a portion of an invoice," and must "prepare and issue a written statement" justifying any refusal. N.Y.G.B.L. § 756-a(2)(a)(i). Payment must be made within 30 days of approval of the invoice, and the owner may withhold "only an amount that is sufficient to pay the costs and expenses the owner reasonably expects to incur in order to cure the defect" that prompted the disapproval. N.Y.G.B.L. §§ 756-a(3)(a)(ii), (iv).

The PPA provides several remedies for noncompliance. First, if the owner fails to pay within the mandated time period, interest begins to accrue. N.Y.G.B.L. § 756-b(1)(a). Second, if the owner fails to approve or disapprove an invoice in time, or fails to pay "the undisputed invoice amount" in time, the contractor may suspend performance. N.Y.G.B.L. § 756-b(2)(a)(i). Finally, "[u]pon receipt of a written complaint . . . that an owner has violated the provisions of this article . . . the parties shall attempt to resolve the matter giving rise to such complaint." N.Y.G.B.L. §756-b(3)(a). If they cannot agree on a resolution, "the aggrieved party may refer the matter . . . to the American Arbitration Association for an expedited arbitration." N.Y.G.B.L. § 756-b(3)(c). The PPA further declares that any contractual provision "stating that expedited arbitration as expressly provided for and in the manner established by [§ 756-b] is unavailable to one or both parties" is "void and unenforceable." N.Y.G.B.L. § 757(3).

2

On May 9, 2019, Pray submitted an interim invoice for $721,305.39. By letter dated May 13, 2019, Maple Drake stated that it would not pay because the amount owed was less than the amount of a lien Pray had asserted against the property. Pray then issued a notice of complaint, alleging that Maple Drake was withholding payment unreasonably and in bad faith, in violation of the PPA. After the parties failed to resolve the dispute, Pray, on June 14, 2019, served a demand for expedited arbitration and requested that it be located in Boston, Massachusetts. Maple Drake then filed in New York state court, seeking an emergency order staying the arbitration. Pray removed the action to this Court, and Maple Drake renewed its application here.[1] On June 25, 2019, Judge Carter granted petitioner's motion for an order to show cause, stayed the arbitration and all response deadlines for 14 days, and scheduled a prompt hearing before the undersigned. Order to Show Cause, ECF No. 11. This Court reviewed the briefing submitted in connection with the order to show cause application and heard oral argument on July 2, 2019.

To justify a preliminary injunction, Maple Drake must show, among other things, a likelihood of success on the merits. North Am. Soccer League, LLC v. United States Soccer Federation, Inc.,

---

[1] This Court has diversity jurisdiction because petitioner is a citizen of Delaware and New Jersey, respondent is a citizen of Rhode Island and Massachusetts, and the amount in controversy (i.e. the amount at stake in the underlying arbitration) is over $700,000. See Doctor's Associates, Inc. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998).

3

883 F.3d 32, 37 (2d Cir. 2018). In this case, the dispositive question is whether the parties' dispute is subject to mandatory arbitration.

It is undisputed that the contract in this case does not provide a basis for compelled arbitration; rather, it permits arbitration only "[u]pon mutual agreement of the parties." Briansky Decl. Exh. A-2 ("General Contract") § 9.1.3, ECF No. 15-2. However, Pray argues that the PPA's arbitration provision applies. Maple Drake disagrees, arguing that the PPA's arbitration provision applies only to undisputed invoices. For several reasons, the Court is persuaded that Pray's reading is correct.

To begin with the caselaw, which is admittedly slim, petitioner relies largely on Southgate Owners Corp. v. KNS Bldg. Restoration Inc., No. 651927/2013, 2013 WL 5869618 (Sup. Ct. N.Y. Cty. July 24, 2013), in which the court held that the PPA's mandatory arbitration provision "applies to undisputed invoices only." Id. at *3. Petitioner also points to Turner Constr. Co. v. J&A Concrete Corp., 44 Misc.3d 217 (Sup. Ct. N.Y. Cty. 2014), in which the court held that parties could contractually modify the availability of arbitration based on the PPA's general savings clause. Id. at 226.[2]

---

[2] The savings clause states that, "[e]xcept as otherwise provided in this article, the terms and conditions of a construction contract shall supersede the provisions of this article and govern the conduct of the parties thereto." N.Y.G.B.L. §756-a.

4

But both decisions by these lower courts are contradicted by a subsequent decision of the Appellate Division, Third Department, in Matter of Capital Siding & Constr., LLC, 138 A.D.3d 1265 (3d Dep't 2016). There, the court held that the PPA's forced arbitration provision applied, even though "a dispute arose [over an invoice] and petitioner withheld certain payments from respondent." Id. at 1265-66. The court went on to say that parties could not contractually abridge or modify the PPA's arbitration provision because § 757(3) "voids and renders unenforceable any contractual provision that makes expedited arbitration unavailable to one or both parties." Id. at 1266. As the Third Department appears to be the only New York appellate authority to have interpreted the relevant provisions of the PPA, Capital Siding is binding on this Court and unambiguously favors respondent.[3]

Even were it not binding, this Court is persuaded that Capital Siding's interpretation is the better one. Petitioner concedes that the PPA's arbitration provision does not, by its terms, limit the availability of arbitration to statutory violations related to undisputed invoices. Rather, it applies broadly to any "violat[ion]" of "the provisions of this article." N.Y.G.B.L. §

---

[3] See Mountain View Coach Lines, Inc. v. Storms, 102 A.D.2d 663, 664 (2d Dep't 1984) ("The Appellate Division is a single statewide court divided into departments for administrative convenience and, therefore, the doctrine of stare decisis requires trial courts in this department to follow precedents set by the Appellate Division of another department until the Court of Appeals or this court pronounces a contrary rule.") (citations omitted).

5

756-b(3)(a). And it is clear that an owner could violate the PPA regarding a disputed invoice - by, for example, disapproving the invoice in bad faith, N.Y.G.B.L. § 756-a(2)(a)(i), or simply by refusing to approve it for a reason that is not sanctioned by the statute. Indeed, Pray's allegation in this case is that Maple Drake withheld payment in bad faith.

Petitioner points to the fact that another remedy, suspension of performance, is available only when the owner fails to pay an undisputed amount (or fails to approve or disapprove the invoice at all). N.Y.G.B.L. § 756-b(2)(a)(i). From this, petitioner infers that the entire remedial section of the statute is concerned only with undisputed invoices. But the Court draws the opposite conclusion: the Legislature's decision to limit one remedy to undisputed invoices strongly suggests that other remedies, which contain no such limitation, are available regardless of whether the invoice is disputed.

Insofar as petitioner contends that it cannot be compelled to arbitrate until there is a determination that it has actually "violated the provisions of" the PPA, N.Y.G.B.L. § 756-b(3)(a), the Court rejects that argument. The predicate for arbitration is a "complaint," which in legal terminology refers to an allegation. It is not necessary for Pray to prove, at this early stage, that Maple Drake is actually in violation of the statute, only to claim as much. It is unthinkable that the New York Legislature intended

6

to subject every demand for arbitration under the PPA to gatekeeping merits litigation in court before any arbitration could proceed. See Pike Company, Inc. v. Tri-Krete Ltd., 349 F. Supp. 3d 265, 277-78 (W.D.N.Y. 2018).

At oral argument, Maple Drake suggested that the language of the PPA – that a party may "refer the matter" to arbitration – left some room for doubt as to whether the other party was compelled to participate. That argument is meritless. The overall context of the provision clearly contemplates mandatory arbitration, and it is flatly implausible that the statute allows a silent veto to the party opposing arbitration.

In sum, Pray's reading of the statute is the better one and is consistent with the limited New York caselaw on the subject. Maple Drake's authorities to the contrary are less persuasive and not binding. Even if the state of the law is somewhat confused, that does not help Maple Drake, which must show a likelihood of success on the merits to justify a preliminary injunction.

This dispute is therefore subject to the PPA's arbitration provision. Because Maple Drake has not shown that it is likely to prevail, its request for a preliminary injunction must be denied. Any further disputes, including whether Maple Drake in fact violated the PPA, are merits questions reserved for the arbitrator.

One final matter. The American Arbitration Association's letter to the parties indicated that respondent requested that the

arbitration be held in Boston, Briansky Decl. Exh. K, ECF No. 15-12, a forum with no connection to the instant dispute or to petitioner. At oral argument, respondent's counsel conceded that this was an error and acknowledged that respondent would not object to holding the arbitration in New York. The AAA's letter further noted that petitioner could object to holding the arbitration in Boston, and it appears that the AAA's rules would presumptively locate the arbitration in New York. See Am. Arbitration Assoc. Constr. Rule 12(a) (where no location is specified in applicable agreement, "the locale shall be the city nearest to the site of the project in dispute").[4] The Court therefore expects that petitioner will promptly request that the arbitration be held in New York and that respondent will join in that request. Based on that understanding, the Court does not see any need to take further action at this time.

For the foregoing reasons, Maple Drake's petition for a stay of arbitration is hereby denied and the petition dismissed. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: New York, NY

July 8, 2019

JED S. RAKOFF, U.S.D.J.

---

[4] Holding the arbitration outside of New York, over petitioner's objection, might itself violate the PPA. Cf. N.Y.G.B.L. § 757(1) (rendering void any contractual provision "that requires any litigation, arbitration or other dispute resolution proceeding arising from the contract to be conducted in another state").

8